## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **JEREMY JACKSON,** individually, and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **PAYCRON INC.,** a Florida company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

1.      Plaintiff Jeremy Jackson ("Mr. Jackson" or "Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.      Mr. Jackson brings this Class Action Complaint and Demand for Jury Trial against Defendant Paycron, Inc. ("Paycron" or "Defendant") to stop Paycron from violating the TCPA by making unsolicited, autodialed calls to consumers without their consent, including calls to consumers registered on the National Do Not Call registry, and to otherwise obtain injunctive and monetary relief for all persons injured by Paycron's conduct.

3.      The Plaintiff never consented to receive Paycron's calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring

this action on behalf of proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4.    A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

5.    Plaintiff Jackson is a Pennsylvania resident.

6.    Defendant Paycron, Inc. is a Florida corporation with its principal place of business in Tarpon Springs, FL. Defendant's Registered Agent is George Werner, 1016 E 15th Ave., Tampa, FL 33605.

## JURISDICTION AND VENUE

7.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. §227 ("TCPA").

8.    This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is incorporated in Florida and headquartered in this District, and because the wrongful conduct giving rise to this case was directed from this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

9.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991,

Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

10.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

11.    The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party". *See* 47 U.S.C. § 227(b)(1)(B).

12.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14.    In 2013, the FCC began requiring prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and

residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The National Do Not Call Registry</u>

15.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.*

16.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

<u>The Growing Problem of Automated Telemarketing</u>

17.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

18.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

19.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

20.     *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

21.     Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018),

https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

### FACTUAL ALLEGATIONS

22.     Paycron provides credit card processing services.

23.     Paycron uses telemarketing to promote its products.

24.     Paycron's telemarketing efforts include the use of predictive dialers to send telemarketing calls.

25.     Recipients of these calls, including Plaintiff, did not consent to receive them.

26.     The Defendant used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Jackson

27.     Plaintiff Jackson is a "person" as defined by 47 U.S.C. § 153(39).

28.     Plaintiff Jackson's telephone, (814) 876-XXXX, is assigned to a cellular telephone service.

29.     Plaintiff Jackson's telephone, (814) 876-XXXX, was placed on the National Do Not Call Registry for more than 30 days prior to the first call.

30.     Plaintiff Jackson's telephone, (814) 876-XXXX, is not associated with a business and is for personal use.

31.     On February 7, 2019, Mr. Jackson received two calls from (772) 246-6585.

32. Mr. Jackson ignored the first call.

33. Mr. Jackson answered the second call.

34. There was an unnatural click and pause when Mr. Jackson answered the call, indicating the use of an ATDS.

35. When a live human appeared on the line, Mr. Jackson was solicited for the Defendant's services.

36. Confirming the conversation, Mr. Jackson received an e-mail from "Jerry Miller," jerry@payrcon.com.

37. Mr. Jackson also attempted to call (772) 246-6585, which was a non-working number. The fact that this was a non-working number is further indication of a call being made with an ATDS, as it takes computer dialing equipment to have a random (and non-working) Caller ID number appear.

38. Mr. Jackson asked to not be called anymore.

39. The Defendant ignored this request.

40. On March 6, 2019, Mr. Jackson received a call from (941) 358-9717.

41. There was an unnatural click and pause when Mr. Jackson answered the call, indicating the use of an ATDS.

42. When a live human appeared on the line, Mr. Jackson was solicited for the Defendant's services.

43. Confirming the conversation, Mr. Jackson received an e-mail from "Alex Silva," alex@payrcon.com.

44. Mr. Jackson asked to not be called anymore.

45.     Mr. Jackson also attempted to call (941) 358-9717, which was a non-working number. The fact that this was a non-working number is further indication of a call being made with an ATDS, as it takes computer dialing equipment to have a random (and non-working) Caller ID number appear.

Common Allegations

46.     A number of individuals have complained about telemarketing calls from the same Caller ID that called Mr. Jackson:

"Typical spam call."

https://www.whitepages.com/phone/1-772-246-6585 (Mar. 8, 2019).

"(772) 246-6585 is a Robocaller"

https://www.nomorobo.com/lookup/772-246-6585 (Mar. 8, 2019).

47.     To the extent Defendant contends that they obtained consent or agreement from Plaintiff and the class members for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained.

48.     In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Defendant can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access.

49.     Plaintiff and the other call recipients were harmed by these calls. They were

temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and other class members.

## CLASS ALLEGATIONS

50.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed Class:** All persons in the United States who from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using the same dialing equipment used to call Plaintiff, (3) for substantially the same reason Defendant called Plaintiff, and (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant does not claim to have obtained prior express written consent.

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's phone number had been listed on the national Do Not Call registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiff, or (b) Defendant does not claim to have obtained prior express written consent.

The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

9

from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant have been fully and finally

adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions

following appropriate discovery.

51.    **Numerosity**: On information and belief, there are hundreds, if not thousands

of members of the Classes such that joinder of all members is impracticable.

52.    **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the

Classes include, but are not necessarily limited to the following:

> (a)  whether Defendant utilized an automatic telephone dialing system to make
>       its calls to Plaintiff and the members of the Classes;
>
> (b)  whether Defendant systematically made multiple telephone calls to
>       Plaintiff and consumers whose phone numbers were registered with the
>       DNC;
>
> (c)  whether Defendant made calls to Plaintiff and members of the Classes
>       without first obtaining prior express written consent to make the calls;
>
> (d)  whether Defendant made autodialed telephone calls to Plaintiff and
>       members of the Classes despite being asked to stop calling;
>
> (e)  whether Defendant's conduct constitutes a violation of the TCPA; and
>
> (f)  whether members of the Classes are entitled to treble damages based on
>       the willfulness of Defendant's conduct.

53.    **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Classes, and has retained counsel competent and experienced in

class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has

no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

54.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Jackson and the Autodialed Class)**

55.    Plaintiff repeats and realleges paragraphs 1-54 of this Complaint and incorporates them by reference herein.

56.    The foregoing acts and omissions of Paycron and/or its affiliates, agents, and/or other persons or entities acting on Paycron's behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to the Plaintiff's cellular telephone.

57.     The Defendant's violations were negligent, willful, or knowing.

58.     As a result of Paycron's and/or its affiliates, agents, and/or other persons or entities acting on Paycron's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

59.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Paycron and/or its affiliates, agents, and/or other persons or entities acting on Paycron's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Jackson and the Do Not Call Registry Class)**

60.     Plaintiff repeats and realleges the paragraphs 1-54 of this Complaint and incorporates them by reference herein.

61.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

62.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless

telephone numbers."[1]

63.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

64.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

65.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective phone numbers on the DNC, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

66.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Do Not Call Registry Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jackson, individually and on behalf of the Classes, prays for the following relief:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number and other calls to consumers whose telephone numbers are registered on the Registry in the future.

F.      An award to Plaintiff and the Classes of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**JEREMY JACKSON**, individually and on behalf of those similarly situated individuals

Dated: March 11, 2019

*/s/ Avi Kaufman*
Avi R. Kaufman (84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Trial Counsel*

15